VORYS, SATER, SEYMOUR AND PEASE LLP
Shane T. Micheil (SBN 312460)
stmicheil@vorys.com
4675 MacArthur Court, Suite 700
Newport Beach, California 92660
Telephone: (949) 531-4493
Facsimile: (949) 531-4493

Attorney for Plaintiff
ASICS AMERICA CORPORATION

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| ASICS AMERICA CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>HAS BRANDS LLC, OREN HALALI, and JOHN DOES, 1-10,<br><br>Defendants. | Case No. _____<br><br>**COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF 15 U.S.C. § 1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS** |

Plaintiff ASICS America Corporation, a California corporation ("Plaintiff" or "ASICS"), brings this action against Defendant HAS BRANDS LLC, Defendant Oren Halali ("Halali"), and John Does 1-10 (collectively, "Defendants") for trademark infringement in violation of the Lanham Act, 15 U.S.C. §§ 1114 and 1125; unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a); unfair and deceptive business practices in violation of under Cal. Bus. & Prof. Code §§ 17200, *et seq.;* unfair competition under California common law; and tortious interference with contract and business relations.   These claims arise from Defendants' misappropriation of ASICS' trademarks in connection with Defendants' unlawful and

unauthorized sale of non-genuine products bearing ASICS' trademarks on the Internet.

## PARTIES

1.   Plaintiff is a corporation, organized under the laws of California, with its principal place of business located in Irvine, California.

2.   Defendant HAS BRANDS LLC is a limited liability company, organized under the laws of New York, with its principal place of business located in New York, New York.  According Articles of Organization filed with the New York Secretary of State, HAS BRANDS LLC's registered address is 519 8th Ave., Rm. 800, New York, NY 10018.

3.   Defendant Halali is a natural person who, upon information and belief, is the owner and principal of Defendant HAS Brands LLC.  Upon information and belief, Halali resides at 519 8th Ave., Rm. 800, New York, NY 10018.

4.   Upon information and belief, Defendants operate a third-party storefront on www.amazon.com ("Amazon") that as of the date hereof is called "HAS BRANDS," with a Merchant ID number of A1L773GETBGUZ21.  The "HAS BRANDS" storefront can be accessed at https://www.amazon.com/sp?ie=UTF8&seller=A1L773GETBGUZ21.   "HAS BRANDS LLC" is listed as the business name on the storefront page and the address provided by the storefront to Amazon customers is Halali's residential address and HAS BRANDS LLC's registered address, 519 8th Ave., Rm. 800, New York, NY 10018.

5.   The true names, involvement, and capacities, whether individual, corporate, associated, or otherwise, of Defendants John Does 1 through 10 ("Doe Defendants") are unknown to ASICS.  Therefore, ASICS sues these Defendants by a fictitious name.  ASICS is informed and believes, and on that basis alleges, that the Doe Defendants include persons and entities assisting or acting in connection with the actions complained of herein and include persons and entities that are responsible in

some manner for the acts, occurrences, and liability hereinafter alleged and referenced.    The Doe Defendants are unknown natural persons and/or corporations/business entities that unlawfully acquired, distributed, or sold products bearing ASICS' trademarks.  When the true names, involvement, and capacities of these parties are ascertained, ASICS will seek leave to amend this Complaint accordingly.

## **JURISDICTION**

6.    This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1338, and 28 U.S.C. § 1367.  Plaintiff's federal claims are predicated on 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a) and (c), and its claims arising under the laws of the State of California are substantially related to its federal claims such that they form part of the same case or controversy under Article III of the United States Constitution.

7.    This Court has personal jurisdiction over Defendants because they have expressly aimed tortious activities toward the State of California and established sufficient minimum contacts with California by, among other things, advertising and selling infringing products bearing ASICS' trademarks to consumers within California through a highly interactive commercial website, through the regular course of business, with the knowledge that ASICS is located in California and is harmed in California as a result of Defendants' sales of infringing products to California residents.  Defendants know that ASICS is located in California, among other reasons, because they received a cease-and-desist letter informing them that ASICS is located in California and is harmed in California by their unlawful actions. ASICS' claims arise out of Defendants' sales of infringing products bearing ASICS' trademarks to California residents through the regular course of business.

8.    Defendants continue to engage in these actions despite being put on notice of their illegal conduct and the impendency of this action.

///

**COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF 15 U.S.C. § 1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS**

**VENUE**

9.      Venue is properly founded in this judicial district pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to the claims herein occurred within this judicial district.

**FACTUAL ALLEGATIONS**

**ASICS and Its Trademarks**

10.      ASICS markets and sells high-quality athletic footwear, apparel, sportstyle, and accessory products under the ASICS® brand name.

11.      ASICS permits its products to be purchased by end-user consumers in the United States only from ASICS itself or from sellers who are expressly authorized by ASICS to sell ASICS products ("Authorized Retailers").

12.      ASICS permits Authorized Retailers to sell ASICS products in approved channels only and requires Authorized Retailers to abide by agreements, policies, and other rules that impose requirements relating to quality controls, customer service, and other sales practices (collectively, the "ASICS Terms").

13.      ASICS devotes a significant amount of time, energy, and resources toward protecting the value of its brand, products, name, and reputation. By allowing end-user consumers to purchase ASICS products only from ASICS itself or from Authorized Retailers who are required to follow the quality controls and other requirements in the ASICS Terms, ASICS ensures that consumers receive products that are subject to its quality controls and maintains the integrity and reputation of the ASICS brand. In the highly competitive athletic footwear and apparel market, quality and customer service are a fundamental part of a consumer's decision to purchase a product.

14.      To promote and protect the ASICS brand, ASICS owns or is the exclusive licensee of numerous trademarks with the United States Patent and Trademark Office, including but not limited to: ASICS® U.S. Trademark

///

**COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF 15 U.S.C. § 1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS**

1    Registration Numbers 1768724, 1780294, 1128988, 3305197, and 3525787, which

2    have become incontestable.

3        15.    The registration for each of the ASICS Trademarks is valid, subsisting,

4    and in full force and effect.

5        16.    ASICS actively uses, advertises, and markets goods and services under

6    the ASICS Trademarks in commerce.

7        17.    Consumers recognize the ASICS Trademarks as being associated with

8    high-quality athletic footwear, apparel, sportstyle, and accessory products.

9        18.    Due to the quality and exclusive distribution of ASICS' products, and

10    because ASICS is recognized as the source of high-quality products, the ASICS

11    Trademarks have enormous value.

### Online Marketplaces and the Challenge They Present
### to ASICS Product Quality

14        19.    E-commerce retail sales have exploded over the past decade.  From 2013

15    to the end of 2023, the percentage of total retail sales in the United States that were

16    completed through e-commerce channels rose from 5.6% to 15.6%.  *E-Commerce*

17    *Retail Sales as a Percent of Total Sales*, FEDERAL RESERVE BANK OF ST. LOUIS

18    (November 21, 2023), https://fred.stlouisfed.org/series/ECOMPCTSA.

19        20.    In 2022, consumers spent $1.03 trillion on e-commerce sales, a 7.7%

20    increase from 2021.  *See* Jessica Young, *US ecommerce in 2022 tops $1 trillion for*

21    *first    time*,    Digital    Commerce    360    (February    17,    2023),

22    https://www.digitalcommerce360.com/article/us-ecommerce-sales/.    The    massive

23    growth in e-commerce is being driven largely by sales on online marketplaces.  For

24    example,  in  2022,  United  States  consumers  spent  $869.8  billion  on  U.S.

25    marketplaces, including $367 billion on Amazon.  *See* James Risley, *What are the top*

26    *online    marketplaces?*,    Digital    Commerce    360    (March    1,    2023),

27    https://www.digitalcommerce360.com/article/infographic-top-online-marketplaces/.

28    ///

**COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF 15 U.S.C. §
1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS**

21.     While online marketplaces have created a great deal of opportunity, they also greatly challenge a brand owner's ability to control the quality and safety of its products.

22.     Unlike when purchasing products at a brick-and-mortar store, consumers who purchase products through online marketplaces cannot touch, inspect, or interact with products before purchasing them.  Instead, consumers must trust that the product they select over the Internet will be authentic and of the quality they expect and typically receive from the manufacturer.

23.     Online marketplaces have an exceedingly low barrier to entry, do not require sellers to be authorized retailers of the products they sell, and do not require sellers to disclose to consumers whether they are an authorized or unauthorized seller. As a result, any person who is able to obtain a brand owner's products through unauthorized diversion can sell the products on online marketplaces while concealing that they are an unauthorized seller who is outside of, and does not abide by, the brand owner's quality controls.

24.     Online marketplaces are overrun by unauthorized sellers who have no relationship with (or obligations to) brand owners who exercise quality controls over their products sold by authorized retailers.   It is unfortunately common for unauthorized sellers to sell diverted products on online marketplaces that are of lesser quality than products sold through brand owners' authorized channels.  *See* Scott Cohn, *Greed Report: Your quest for savings could land you in the "gray market,"* CNBC, Sept. 8, 2016, https://www.cnbc.com/2016/09/08/greed-report-your-quest-for-savings-could-land-you-in-the-gray-market.html;   Alexandra  Berzon  et  al., *Amazon Has Ceded Control of Its Site. The Result: Thousands of Banned, Unsafe or Mislabeled  Products*,  The  Wall  Street  Journal,  Aug.  23,  2019, https://www.wsj.com/articles/amazon-has-ceded-control-of-its-site-the-result-thousands-of-banned-unsafe-or-mislabeled-products-11566564990.     It  is  also common for unauthorized sellers to sell products that are previously used—including

1  products retrieved from dumpsters—as "new" on online marketplaces.  *See* Khadeeja

2  Safdar et al., *You Might Be Buying Trash on Amazon—Literally*, THE WALL STREET

3  JOURNAL, Dec. 18, 2019, https://www.wsj.com/articles/you-might-be-buying-trash-

4  on-amazonliterally-11576599910.

5      25.  Third-party sellers on Amazon may also sell counterfeit items, or allow

6  counterfeit items to enter the stream of commerce through poor controls, sourcing,

7  and fulfillment practices.

8      26.  For example, the Department of Homeland Security recently published a

9  report noting that online marketplaces can facilitate the sale of counterfeit goods and

10  that "American consumers shopping on e-commerce platforms and online third-party

11  marketplaces now face a significant risk of purchasing counterfeit or pirated goods."

12  Department of Homeland Security, *Combating Trafficking in Counterfeit and Pirated*

13  *Goods*  (Jan.  24,  2020),  available  at

14  https://www.dhs.gov/sites/default/files/publications/20_0124_plcy_counterfeit-

15  pirated-goods-report_01.pdf, at 7.  The report stated that consumers on online

16  marketplaces cannot rely on traditional "red flag" indicators of counterfeits and "have

17  been surprised to discover that upon completion of an online sales transaction, that

18  the order will be fulfilled by an unknown third-party seller." *Id*. at 14-15, 38.  To

19  mitigate these problems, the report recommended "[s]ignificantly enhanced vetting of

20  third-party sellers." *Id.* at 35.

21      27.  The business press has also reported extensively on how there is an

22  "epidemic" of counterfeit products being sold on the online marketplaces that

23  diverters are exploiting because they know consumers trust marketplaces and think

24  the products they are buying through the marketplaces are genuine.  *See* Spencer

25  Soper,  *Amazon Gets Real About Fakes*,  Bloomberg,  Nov. 28, 2016,

26  https://www.bloomberg.com/news/articles/2016-11-28/amazon-gets-real-about-fakes;

27  Jay Greene, *How Amazon's quest for more, cheaper products has resulted in a flea*

28  *markets  of  fakes*,  THE  WASHINGTON  POST,  Nov.  14,  2019,

**COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF 15 U.S.C. § 1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS**

1   https://www.washingtonpost.com/technology/2019/11/14/how-amazons-quest-more-
2   cheaper-products-has-resulted-flea-market-fakes/?arc404=true.

3          28.    The problem of sales of counterfeit and other poor-quality products on
4   online marketplaces has become so serious that, in November 2019, the United States
5   Senate Finance Committee issued a bipartisan report on the issue.  The Committee
6   found that the rise of e-commerce has fundamentally changed how consumers shop
7   for products and that, as e-commerce has grown, counterfeit goods and products that
8   "violate a right holder's trademark or copyright" are being sold at an accelerating rate
9   on e-commerce platforms.    The Committee concluded that these sales are a
10  "significant threat" to rights holders' brands and to consumers, and that under current
11  law it is up to rights holders to protect their intellectual property rights online.  *See*
12  Senate Finance Committee, *The Fight Against Fakes: How Statutory and Regulatory*
13  *Barriers Prevent the Sharing of Information on Counterfeits*, Nov. 7, 2019,
14  https://www.finance.senate.gov/imo/media/doc/The%20Fight%20Against
15  %20Fakes%20%20(2019-11-07).pdf.

16         29.    In its 2020 and 2021 annual reports to its shareholders, Amazon also
17  admitted that third-party sellers on its marketplace are selling products that are
18  "counterfeit," "pirated," "stolen," or otherwise "materially different" from the
19  product that was described to consumers. *See Amazon.com, Inc., Annual Report*
20  *(Form 10-K) at 8 (Feb. 3, 2021), available at https://ir.aboutamazon.com/sec-*
21  *filings/default.aspx; Amazon.com, Inc., Annual Report (Form 10-K) at 8 (Feb. 4,*
22  *2022), available at https://ir.aboutamazon.com/sec-filings/default.aspx.*  Amazon
23  conceded that these actions are "violating the proprietary rights of others," and
24  warned its investors that it could be liable for "unlawful activities" of Amazon third-
25  party sellers.

26         30.    Because brand owners have no relationship with or control over
27  unauthorized sellers, brand owners have no ability to exercise their quality controls
28  over products sold by unauthorized sellers or to ensure the products are safe and

**COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF 15 U.S.C. §
1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS**

1   authentic.   A manufacturer's inability to exercise control over the quality of its
2   products presents serious risks to the safety of consumers.

3        31.   The structure, construction, and user interface of online marketplaces
4   also pose threats to a manufacturer's ability to maintain its goodwill, reputation, and
5   brand integrity.

6        32.   When purchasing products on an online marketplace, customers are not
7   informed whether a seller of a product is authorized by the manufacturer.
8   Additionally, the interface design of many online marketplaces causes consumers to
9   falsely believe that they are always purchasing from the manufacturer or, at
10  minimum, from an authorized retailer that is selling under the manufacturer's
11  oversight and with the manufacturer's approval.   Consumers who purchase on
12  Amazon are particularly likely to experience this confusion because, on Amazon, all
13  sellers of a product are listed under a single product listing that states "By [name of
14  brand]" immediately under the title of the product even though many products are
15  sold on Amazon by unauthorized sellers that have no relationship with the brand
16  owner.

17       33.   For all of these reasons, a vast number of consumers purchase products
18  on online marketplaces without recognizing that they purchased from an unauthorized
19  seller that does not (and cannot) follow the manufacturer's quality controls.

20       34.   When a customer purchases a product on an online marketplace and
21  receives a damaged, defective, or otherwise poor-quality product, the customer is
22  much more likely to associate the problem with the brand/manufacturer rather than
23  the product seller.   *See* Ganda Suthivarakom, *Welcome to the Era of Fake Products*,
24  The New York Times, Feb. 11, 2020, https://www.nytimes.com/wirecutter/blog
25  /amazon-counterfeit-fake-products/ ("Angry customers who confuse fakes for the real
26  thing can have a devastating effect on public perception of a brand. For instance, the
27  maker of Brush Hero. . . saw the listing for his product get undercut by sellers
28  offering a much lower price for poor-quality counterfeits. . . Brush Hero's business

- 9 -

1    could not withstand the effect of counterfeits and [the company] would be laying off

2    most of its U.S. staff").

3        35.    Online marketplaces also give disgruntled customers a powerful and

4    convenient forum to air their grievances about problem products—online product

5    reviews. Any consumer who is dissatisfied with the product received can post a

6    review on the marketplace for all other consumers across the world to see. These

7    reviews, which are often permanently fixed, will often criticize the brand rather than

8    the marketplace seller that sold the product.

9        36.    Online product reviews significantly impact a brand's reputation.

10    Survey results show that 82% of United States adults "sometimes" consult online

11    reviews for information when they consider buying a new product online, and 40%

12    "always" or "almost always" consult such reviews. Aaron Smith & Monica

13    Anderson, *Online reviews*, PEW RESEARCH CENTER, Dec. 19, 2016,

14    http://www.pewinternet.org/2016/12/19/online-reviews/.

15        37.    Consumers place extraordinary trust in these online reviews. Indeed,

16    consumers are more than 10 times more likely to rely on consumer-generated product

17    reviews than product descriptions written by manufacturers. *Moms Place Trust in*

18    *Other Consumers*, EMARKETER, Feb. 10, 2010, https://www.emarketer.com/

19    Article/Moms-Place-Trust-Other-Consumers/1007509.

20        38.    Because consumers so heavily "rely on reviews when they're shopping

21    online," the Federal Trade Commission has begun suing companies who post fake

22    reviews of their products on online marketplaces. Megan Henney, *FTC cracking*

23    *down on fake Amazon reviews*, FOX BUSINESS, Feb. 28, 2019,

24    https://www.foxbusiness.com/technology/ftc-cracking-down-on-fake-amazon-

25    reviews (quoting a press release from the director of the FTC).

26        39.    Reviews are especially impactful on online consumers. In a brick-and-

27    mortar store, a consumer can simply select another product from the shelf if the initial

28    product selected appears to be compromised. However, online consumers are left

1  simply having to hope that the product that shows up on their doorstep is of

2  appropriate quality.  Therefore, online consumers rely more on brand reputation and

3  reviews.

4      40.    Because of the reliance consumers place on online reviews, negative

5  online reviews can be the death knell for a manufacturer's online product listings.

6  According to one study, merely three negative online reviews will deter a majority

7  (67%) of online consumers from purchasing a particular product.  Graham Charlton,

8  *How many bad reviews does it take to deter shoppers?*, ECONSULTANCY, April 11,

9  2011,        https://econsultancy.com/blog/7403-how-many-bad-reviews-does-it-take-to-

10  deter-shoppers.

11      41.    Negative reviews also hurt a brand's placement in search results on

12  Amazon and other search engines, as Amazon's search algorithm downgrades

13  products it believes consumers are less likely to buy.  Thus, poor reviews can create a

14  downward spiral where downgraded search placement leads to reduced sales, which

15  leads to search placement falling further.

16  **ASICS Has Been the Target of Negative Online Marketplace Reviews from**

17  **Customers Who Purchased Products from Unauthorized Sellers**

18      42.    Consumers who purchase from unauthorized sellers on online

19  marketplaces frequently receive poor-quality products and leave negative reviews on

20  the product listing.  These negative reviews injure consumer perceptions of the

21  brand's quality and reputation, as well as its placement in search results, ultimately

22  causing the brand to suffer damage to its goodwill and lost sales.

23      43.    ASICS has been a victim of the issues caused by unauthorized sellers on

24  online marketplaces.  Numerous consumers who purchased ASICS products from

25  unauthorized sellers, like Defendants, have written negative reviews where they

26  complained of receiving products that were damaged, defective, previously used,

27  inauthentic, or of otherwise poor quality.

28  ///

44. For example, on August 12, 2023, Amazon user "Maria Cruz" complained that she received "[u]sed sneakers"



Maria Cruz

★☆☆☆☆ **Disgusting**
Reviewed in the United States on August 12, 2023
Size: 8.5 | Color: Metropolis/Frosted Rose

Used sneakers and wrong color!

45. On July 30, 2023, Amazon user "MightyMightyLJ" complained that she received a used pair of New Balance-brand shoes despite ordering a new pair of ASICS shoes on Amazon.

MightyMightyLJ

★☆☆☆☆ **Ordered new ASICS. Received used New Balance.**
Reviewed in the United States on July 30, 2023
Size: 10 X-Wide | Color: Black/Black | Verified Purchase

I ordered a pair of NEW ASICS running shoes for a trip. I received a pair of USED New Balance shoes. Wasted my time and money.

46. On July 29, 2023, Amazon user "Scott Schuette" complained that, while he typically "exclusively buy[s] the [ASICS] Kayano style shoes," the ASICS shoes he purchased on Amazon "were USED shoes!" and that "this is not the experience I expect from Amazon or Asics."

Scott Schuette

★☆☆☆☆ **Not what I expected**
Reviewed in the United States on July 29, 2023
Size: 9 | Color: Deep Ocean/Cherry Tomato | Verified Purchase

For the record, I exclusively buy the Kayano style shoes as they help with my over-pronating gait and flat feet. They are amazing. I got these pair with a gift card I received for my work anniversary. I was excited to get them. However when they showed up I was mortified.

I thought it was strange, this new pair of shoes had no outer box, the shoe box from Amazon. When I pulled the paper back it was clear, these were USED shoes! Not only were they used, but they had dried food on the. At first I thought it was poop. The soles were dirty as if someone just tossed a pair of soiled, VERY USED sneakers in a box and returned them and I was the poor soul who got them next.

I understand Asics sells "Road Tested" shoes, running shoes with little wear. The amount of wear on the bottom was significant, more than a current pair I have worn for 6 months. But this is besides the point. I ORDERED NEW SHOES.

I quickly returned and will most likely get another pair... somewhere. Seriously this is not the experience I expect from Amazon or Asics, and quite frankly I should get SOMETHING for my time and this awful experience. You can both do SO MUCH BETTER!



2 people found this helpful

///

///

///

**COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF 15 U.S.C. § 1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS**

47.     On July 27, 2023, Amazon user "Ursula Banahan" complained that she "received sneakers that had been returned by someone. Looks as though they were cleaned upon return, but you missed a couple of spots. Also, the return [label] from the previous owner was still inside the shoe!"



48.     On June 19, 2023, Amazon user "Eric Morra" complained that the ASICS shoes arrived with the shoe lace for the right shoe "ripped out" and the "box was also damaged."



49.     On June 5, 2023, Amazon user "Matt Parkhurst" complained that the ASICS shoes he purchased on Amazon were previously used.



50.     On March 19, 2023, an Amazon customer complained that "[t]hese shoes arrived without a box and in [used] condition. They were supposed to be new."



///

- 13 -

51.   On March 19, 2023, Amazon user "MM" speculated that the ASICS shoes purchased on Amazon were not authentic, noting that "I didn't realize until after that I wasn't ordering directly from Asics."



52.   On February 24, 2023, Amazon user "DR" complained that the ASICS shoes purchased on Amazon were "used, worn shoes, with the tags removed and the sole dirty."



53.   On February 16, 2022, Amazon user "Dance" complained that the ASICS shoes purchased on Amazon "were filthy when they arrived. They had dirt, hair, and what looked like gum stuck to them."

54.   On February 8, 2022, Amazon user "JENN B" reported that the ASICS shoes she purchased "arrived with obvious wear, repackaged in a different box. Interior of shoes were covered in dog hair..... I didn't pay $140 for someone else's used shoes!"

**COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF 15 U.S.C. § 1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS**

55.    On January 4, 2022, Amazon user "Raina Trevenna" complained that the ASICS shoes she purchased on Amazon were "[n]ot new condition" and "obviously worn."



56.    On December 10, 2021, Amazon user "WarriorPoet" complained that the ASICS shoes purchased on Amazon were "[f]alling apart right out of the box!"



57.    On October 2, 2021, Amazon user "Aaron Goedhart" mentioned that "I have other Asics that feel great" but the ASICS shoes he purchased on Amazon "are the worst shoes i have ever bought" and "feel like they are cheap shoes."

|  | Aaron Goedhart |
| --- | --- |
| ★☆☆☆☆ **junk** | |
| Reviewed in the United States on October 2, 2021 | |
| Size: 10.5 X-Wide   Color: Black/Classic Red   **Verified Purchase** | |

These are the worst shoes i have ever bought. I have other Asics that feel great but these feel like they are cheap shoes you would buy from Walmart. This will probably be the last time I ever buy shoes off Amazon.

///

///

///

///

**COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF 15 U.S.C. § 1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS**

58.    On September 24, 2021, Amazon user "Carmen Miriam" complained that she received a used pair of ASICS shoes, noting "[t]he soles where [sic] dirty!"

**Carmen Miriam**

★☆☆☆☆ **Used!**

Reviewed in the United States on September 24, 2021

Size: 9.5 Wide | Color: Carrier Grey/Silver | Verified Purchase

I ordered new and pay for new and I got an used pair! The soles where dirty! And so the inside. I returned the shoes and got a full refund.

59.    On September 22, 2021, an Amazon customer complained that the pair of ASICS shoes they purchased on Amazon arrived without insoles.



**Amazon Customer**

★☆☆☆☆ **Unacceptable**

Reviewed in the United States on September 22, 2021

Size: 9 | Color: Black/Sheet Rock | Verified Purchase

I am sooo angry, I was so excited to receive my running shoes! They finally arrived but they don't have insoles!!! Really who sends shoes without the insoles that is what makes the shoes…

60.    On September 11, 2021, Amazon user "Jesse" stated that the ASICS shoes they purchased on Amazon "Don't Look Real," noting "I own several pairs of ASICS and these do not appear to be made of the same high quality materials."

**Jesse**

★☆☆☆☆ **Don't Look Real**

Reviewed in the United States on September 11, 2021

Size: 10.5 X-Wide | Color: Graphite Grey/Green Gecko | Verified Purchase

I own several pairs of ASICS and these do not appear to be made of the same high quality materials.

61.    On September 6, 2021, Amazon user "SK" complained that the ASICS shoes they purchased on Amazon "[m]ust be fake" because unlike this consumer's previous experience with ASICS shoes, these shoes were damaged after wearing them only three or four times.

///

///

**COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF 15 U.S.C. § 1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS**

1

2

3

4

5

6

> **SK**
>
> ⭐☆☆☆☆ **Must be fake**
> Reviewed in the United States on September 6, 2021
> Size: 8 X-Wide | Color: Black/Classic Red | **Verified Purchase**
> I am a user of Asics shoes for many years. I got a deal on Amazon on these shoes. Shoes are very comfortable but torn out when wear third or fourth times. My bad luck is- I used these shoes after two months of purchase so return not possible. Beware before buy fake product.
>
> 

7

8

62.     On August 13, 2021, Amazon user "kk" complained about receiving a pair of ASICS shoes that had already been worn.

9

10

11

12

13

> **kk**
>
> ⭐☆☆☆☆  **The shoes had been worn. Stained soles. Pebbles inside shoe.**
> Reviewed in the United States on August 13, 2021
> Size: 9 | Color: Peacoat/Hot Pink | **Verified Purchase**
> The tried to sell a pair of shoes that had been worn.

14

15

63.     On August 11, 2021, Amazon user "Carrot73celery" also reported receiving a used pair of ASICS shoes.

16

17

18

19

20

21

22

23

> **Carrot73celery**
>
> ⭐☆☆☆☆  **I received a pair of USED shoes!**
> Reviewed in the United States on August 11, 2021
> Size: 8 | Color: Graphite Grey/Dried Berry | **Verified Purchase**
> The shoes I received were clearly used - I will be returning them and am very displeased by this experience.
>
> 
>
> 2 people found this helpful

24

25

26

64.     On July 30, 2021, Amazon user "J.Kenzo" complained that the ASICS shoes purchased on Amazon were "stiff and extremely uncomfortable. Definitely not the ASCIS [sic] quality like before."

27

///

28

///

**COMPLAINT FOR DAMAGES, INJUNCTIVE AND OTHER RELIEF FOR VIOLATION OF 15 U.S.C. § 1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS**



65.   On July 23, 2021, Amazon user "suresh Gunda" complained that they received a damaged ASICS product.

66.   The foregoing reviews are only a small sample of the negative reviews of ASICS products that have been posted on the Amazon platform.

67.   Amazon does not allow product reviews to identify the seller that sold the product that is the subject of the product review.  Given that unauthorized sellers are not subject to ASICS' quality controls, it is likely that some of the foregoing negative reviews—and the many similar reviews of ASICS products that appear on the Amazon website—were written by consumers who purchased products bearing the ASICS Trademarks from unauthorized sellers, such as Defendants.

**ASICS Has Implemented Quality Controls throughout Its Authorized Channels of Distribution to Combat the Problems Presented By Online Marketplaces, Protect the Value of the ASICS Trademarks, and Ensure Customers Receive the Genuine, High-Quality Products They Expect from ASICS**

68.   The above reviews show how sales of poor-quality ASICS products disappoint ASICS' consumers and cause significant harm to the reputation and

goodwill of ASICS and its brand.  To protect itself and consumers from these harms, ASICS implemented a quality control program that applies to all of its Authorized Retailers, including sellers that sell in a brick-and-mortar retail setting and sellers that sell online.

69.    ASICS' distribution controls are a quality control measure intended to minimize the risk and reputational damage caused by the illegal sale of poor-quality products bearing the ASICS Trademarks by unauthorized sellers, like Defendants, who do not abide by ASICS' quality controls.  The goal of ASICS' quality control program is to ensure that consumers who buy ASICS products, including ones buying online, receive the high-quality products and services that they expect with the ASICS name.  By preventing consumers from receiving poor-quality products, the program both protects consumers from confusion and also protects the value and goodwill associated with the ASICS brand.

70.    ASICS abides by its quality control requirements and requires its Authorized Retailers to abide by them as well.

71.    ASICS' ability to exercise its quality controls is essential to the integrity and quality of ASICS products, as well as the value of the ASICS Trademarks and other intellectual property.

72.    ASICS' quality controls begin with requiring that all outside sales of its products take place through ASICS' own website and stores, or through Authorized Retailers.  This basic step ensures that everyone who is selling ASICS products is ultimately subject to ASICS' quality control requirements.

73.    The ASICS Terms limit to whom and where Authorized Retailers may sell ASICS products.  To prevent persons outside of ASICS' quality controls from acquiring and reselling ASICS products, the ASICS Terms prohibit Authorized Retailers from selling ASICS products to any third party who intends to resell the products.  Authorized Retailers are permitted to sell ASICS products only to end-user consumers.

74.     Authorized Retailers are also prohibited from selling ASICS products on any website unless they first obtain written consent from ASICS.

75.     These restrictions are essential to ASICS' ability to exercise its quality controls over ASICS products because they prevent unauthorized sellers from obtaining and reselling ASICS Products and allow ASICS to know where all of its products are being sold online by Authorized Retailers.  If a quality issue arises through an online sale, ASICS can identify the Authorized Retailer that made the sale, contact the Authorized Retailer, and address the issue immediately.  ASICS is unable to take such action against unauthorized sellers because it does not know who those sellers are and cannot obtain their cooperation in addressing any product quality issues that may arise.

76.     In addition to restricting where and how Authorized Retailers can sell ASICS Products, the ASICS Terms also require Authorized Retailers to follow numerous quality control requirements related to the inspection, handling, storage, and display of ASICS products.

77.     To ensure that customers receive the genuine and high quality products they expect from ASICS, the ASICS Terms require Authorized Retailers to inspect all ASICS products for any damage, defects, evidence of tampering, and other non-conformance and remove all such products from inventory.  Authorized Retailers are prohibited from selling damaged or defective products.  Further, to assist in identifying any product quality issues, Authorized Retailers are required to report any defects to ASICS.

78.     The ASICS Terms also require that Authorized Retailers store ASICS products in accordance with guidelines issued by ASICS.  This requirement helps ensure that ASICS products are stored properly and are not damaged prior to being shipped to the consumer.

///

///

**COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF 15 U.S.C. § 1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS**

79.     To avoid consumer confusion and ensure that customers receive genuine ASICS products, Authorized Retailers must sell ASICS products in their original packaging and are prohibited from relabeling, repackaging, or altering ASICS products or any accompanying label(s) or literature, unless instructed by ASICS.

80.     Authorized Retailers are also prohibited from tampering with, defacing, or otherwise altering any identifying information on ASICS products, including any serial number, UPC code, or other identifying information.

81.     The ASICS Terms give ASICS the right to monitor and audit Authorized Retailers by inspecting their facilities and records relating to ASICS Products, to ensure their compliance with ASICS' quality control requirements.   Authorized Retailers also must cooperate with ASICS with respect to any product recall or other consumer safety information dissemination effort conducted by ASICS regarding ASICS products.

82.     The ASICS Terms also require Authorized Retailers to provide various customer services to their customers.

83.     For example, Authorized Retailers must familiarize themselves with the features of all ASICS products kept in their inventory so that they can advise customers on the selection and best use of ASICS products.  Following the sale of genuine ASICS products, Authorized Retailers must provide ongoing support to consumers and prompt replies to their inquiries.

84.     ASICS' quality control and customer service requirements are legitimate and substantial and have been implemented so that ASICS can control the quality of goods manufactured and sold under the ASICS Trademarks, to protect consumers as well as the value and goodwill associated with the ASICS Trademarks.

85.     ASICS' quality control and customer service requirements are also material, as they are designed to protect consumers and prevent them from receiving poor-quality products.  Consumers would find it material and relevant to their purchasing decision to know whether an ASICS product that they were considering

buying was being sold by an Authorized Retailer who is subject to ASICS' quality control and customer service requirements or whether the product is being sold by an unauthorized seller who is not subject to, and does not abide by, ASICS' quality controls and over whom ASICS is unable to exercise its quality controls.

**Given the Flood of Poor-Quality Products Being Sold Online and Consumers' Inability to Inspect Such Products before Purchase, ASICS Imposes Additional Requirements on Its Authorized Retailers Who Sell Online**

86.    As shown in consumer reviews cited above (¶¶ 44-65), ASICS products sold online are more susceptible to quality and authenticity problems as consumers cannot see the product before they buy it.  These problems are especially severe on online marketplaces such as Amazon, where sellers can conceal the fact that they are an unauthorized seller and many sellers may share a single product listing page.

87.    Given these heightened risks to consumer satisfaction and the value of its trademarks that are posed by online sellers, ASICS imposes additional quality control requirements on all of its Authorized Retailers who sell ASICS products online.

88.    Authorized Retailers are prohibited from selling ASICS products on any website, or through any online marketplace storefront or account, unless they first apply for and receive prior written approval from ASICS to do so.  To obtain ASICS' approval, Authorized Retailers must submit applications in which they provide information about their business, identify all their sources of ASICS products, and list the specific websites or online marketplaces where they wish to sell products. Applicants then undergo vetting by ASICS that includes review of their business operating record and online review history.

89.    If an Authorized Retailer is approved to sell online (thus becoming an "Authorized Online Seller"), the Authorized Retailer may sell ASICS products online only on the websites or through the online marketplace storefronts or accounts that expressly approved by ASICS ("Authorized Websites") and only if it complies with

1  additional, heightened quality control requirements that are applicable to the
2  particular authorized online sales.  These heightened quality controls include, but are
3  not limited to, requirements around product branding, image use, disclosures to
4  consumers, order fulfilment, and steps to ensure consumer satisfaction.

5  90.    The additional quality control requirements that ASICS imposes on its
6  Authorized Online Sellers are legitimate and substantial and have been implemented
7  to allow ASICS to carefully control the quality of ASICS products that are sold
8  online and quickly address any quality issues that arise.

9  91.    ASICS' additional quality controls are also material, as they have been
10  implemented to ensure that consumers purchasing ASICS products online receive
11  genuine, high-quality ASICS products that abide by ASICS' quality controls.
12  Consumers purchasing ASICS products online would find it relevant to their
13  purchasing decision to know whether the product they are buying is sold by an
14  Authorized Online Seller who is subject to, and abides by, ASICS' quality controls.

15  92.    ASICS regularly audits its Authorized Online Sellers and monitors
16  Authorized Websites to ensure that Authorized Online Sellers are adhering to ASICS'
17  quality control requirements.

18  **Genuine ASICS Products Come with ASICS' Limited Warranty;**
19  **Defendants' Products Do Not**

20  93.    ASICS products purchased from ASICS or ASICS' Authorized
21  Retailers come with the ASICS Limited Warranty (the "ASICS Warranty").

22  94.    The ASICS Warranty provides that customers can receive a repair or
23  replacement product if a product has a defect in manufacturing, materials, or
24  workmanship during the warranty period applicable to the product.  The complete
25  ASICS Warranty statement can be viewed on the asics.com website—see
26  https://www.asics.com/us/en-us/warranty-form/—and is incorporated herein.

27  95.    As discussed above, ASICS cannot ensure the quality of the products
28  sold by unauthorized sellers, like Defendants, who are not subject to ASICS' quality

- 23 -

1  controls.  For this reason, the ASICS Warranty does not cover ASICS products sold
2  by unauthorized sellers, like Defendants, who do not comply with ASICS' quality
3  controls and standards.  Indeed, the ASICS Warranty specifically states: "ASICS
4  reserves the right to reject any warranty claim from a Consumer related to products
5  purchased from unauthorized sellers, including unauthorized internet sites."

6      96.    The ASICS Warranty is a material component of genuine ASICS
7  products.  Consumers who purchase ASICS products with the ASICS Warranty
8  receive the peace of mind that they are receiving a good quality product, that ASICS
9  stands behind the product, and that if a defect occurs, they will have the ability to
10  have the product repaired or replaced.

11     97.    Consumers would find it material and relevant to their purchasing
12  decision to know whether an ASICS product they were considering buying was
13  covered by the ASICS Warranty.  If a consumer knew a product did not come with
14  the ASICS Warranty, the consumer would be less likely to purchase the product.

15      **Defendants are Not Authorized Retailers and Are Illegally Selling**
16      **Non-Genuine Products Bearing the ASICS Trademarks**

17     98.    Due to the risks to consumers and the reputational concerns associated
18  with the illegal sale of products bearing the ASICS Trademarks by unauthorized
19  Internet sellers, ASICS actively monitors the sale of its products online.

20     99.    In the course of this monitoring, ASICS discovered products bearing the
21  ASICS Trademarks being illegally sold by Defendants on Amazon under the
22  storefront name "HAS BRANDS."

23     100.   Particularly troubling is the sheer volume of ASICS products being sold
24  through the "HAS BRANDS" storefront.  Monitoring software shows that, since
25  January 1, 2023, Defendants have sold products bearing the ASICS Trademarks
26  through the storefront for revenue in excess of $25,000.  This likely means that
27  Defendants have sold many hundreds of units of infringing ASICS products.

28  ///

1    101.   After ASICS discovered products bearing the ASICS Trademarks being
2    illegally sold on the Amazon storefront, ASICS investigated the storefront to
3    determine who was operating the storefront.

4    102.   After conducting an investigation, ASICS identified Defendants as the
5    owners and operators of the "HAS BRANDS" storefront.

6    103.   On or about October 3, 2022, counsel for ASICS sent Defendants a
7    cease-and-desist letter, demanding that they immediately cease selling products
8    bearing the ASICS Trademarks.

9    104.   This letter further notified Defendants that they were injuring ASICS in
10   California through their illegal actions and that they would be subject to personal
11   jurisdiction in California if they continued to engage in their conduct.

12   105.   This letter also notified Defendants that ASICS has contracts with its
13   Authorized Retailers that prohibit Authorized Retailers from selling ASICS products
14   to unauthorized resellers, and that Defendants will be liable for tortiously interfering
15   with those contracts if they continue to purchase products bearing ASICS'
16   Trademarks from Authorized Retailers for the purpose of reselling them.

17   106.   Defendants did not respond to this letter and continued to sell products
18   bearing the ASICS Trademarks on the "HAS BRANDS" storefront.

19   107.   Counsel for ASICS sent Defendants a second cease-and-desist letter on
20   or about October 26, 2022, reminding Defendants that they were interfering with
21   ASICS's contracts and would be subject to personal jurisdiction in California if they
22   continued to engage in their illegal conduct.

23   108.   Defendants did not respond to that letter either.

24   109.   On or about May 3, 2023, Counsel for ASICS sent Defendants a draft of
25   the complaint it planned to file against them, again reminding them that their illegal
26   actions would subject them to personal jurisdiction in California.

27   ///
28   ///

**COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF 15 U.S.C. §
1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS**

110.   As of the time of filing, Defendants have not responded to any of ASICS' letters and continue to advertise and sell products bearing the ASICS Trademarks through their "HAS BRANDS" Amazon storefront.

111.   Through their highly interactive "HAS BRANDS" storefront on Amazon, on information and belief, Defendants have sold products bearing the ASICS Trademarks to residents of California through the regular course of business.

112.   Defendants' disregard of ASICS' cease-and-desist letters and continued sale of non-genuine products despite being informed of their unlawful conduct demonstrates that they are acting intentionally, willfully, and maliciously.

**Defendants Are Not Subject to, Do Not Abide by, and Interfere with ASICS' Quality Control Requirements**

113.   Defendants are not Authorized Retailers of ASICS products, and do not abide by ASICS' quality control and customer service requirements that ASICS requires Authorized Retailers to follow.

114.   Defendants' failure to abide by the ASICS Terms prevents ASICS from exercising control over the quality of products Defendants sell bearing the ASICS Trademarks.  Unlike with its Authorized Online Sellers, ASICS cannot monitor or audit Defendants to ensure they are complying with its quality controls or take any action to correct quality problems it discovers or is alerted to in products sold by Defendants.

115.   Because the products Defendants sell bearing the ASICS Trademarks are not subject to, do not abide by, and interfere with ASICS' quality control and customer service requirements, they are not genuine ASICS products.

///

///

///

///

///

**COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF 15 U.S.C. § 1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS**

**Defendants Are Selling Defective, Damaged, Previously Used, and Other Poor-quality Products through Their Amazon Storefront**

116.   Consumers on Amazon can leave reviews of sellers as well as products. Reviews of Defendants' "HAS BRANDS" Amazon storefront show that Defendants have sold numerous poor-quality products to consumers.[1]

117.   For example, several consumers have complained about receiving damaged or used shoes that were advertised as new when purchasing from Defendants' "HAS BRANDS" storefront:

★☆☆☆☆   "The supposedly "brand new" shoes arrived with dried mud on the bottoms and sides of the shoes."
By Von on November 17, 2023.

★☆☆☆☆   "Sent me very well worn used shoes that were even still dirty."
By Joseph Brown on October 6, 2023.

★☆☆☆☆   "Item arrived and the shoes were obviously worn due to the amount of dirt on the bottom. Definitely not new shoes. Don't buy from this seller. Awful."
By Amanda & TJ on September 21, 2023.

★☆☆☆☆   "These shoes are worn!!!"
By Janelle on June 23, 2023.

★☆☆☆☆   "The shoes came without it soles and the inside of the right shoe had burnt marks.."
By Carlos I. on April 20, 2023.

★★☆☆☆   "I payed for new shoes and I got used shoes, they didn't even come in a box! I worked in a shoe warehouse return department and I know when something is "Pristine" or New. I feel i should it gotten a discount, or at least i should it been told I was getting someone else's return shoes. The shoes were great though, nice fit and comfortable."
Read less
By Angelica on February 17, 2021.

118.   Additionally, as seen below, some customers complained of receiving items that seemed inauthentic or like outright counterfeits:

★☆☆☆☆   "As soon as I opened the box they are in horrible condition, they are all scratched up, also they scratch super easily they definitely don't last long. They are not true to size and it makes me thinks they are knock offs."
Read less
By Sammy on September 10, 2023.

---

[1] Although Amazon has stricken some complaints and added disclaimers to some of these complaints stating that Amazon takes "responsibility" for the "fulfillment experiences" described in the complaints, the issues and complaints that customers address in these reviews are clearly the fault of Defendants rather than a fulfillment problem caused by Amazon, like delivering a product to the wrong address.

★☆☆☆☆ "Fake not authentic I have another pair that is authentic and these are fake and way too small."

By Fake not authentic I have the real pair at home and compared it to the pair I got and these are not authentic. And ran small on July 14, 2023.

★☆☆☆☆ "I think these are fake. Both soles fell apart in one wearing."

By AJ on June 22, 2023.

★☆☆☆☆ "Definitely a knock off i received. Cheap material"

By Chris on May 22, 2023.

119. Other customers have complained of receiving incomplete or wrong order and then having difficulty resolving the issue with the "HAS BRANDS" storefront:

★☆☆☆☆ "We received only one shoe not both"

By Ahmad on October 19, 2023.

★☆☆☆☆ "Box was empty!!!"

By Amazon Customer on September 16, 2023.

★☆☆☆☆ "Sends wrong items and is not responsive."

By SJ2k8 on September 6, 2023.

★☆☆☆☆ "Received two right feet shoes. Different size and color and used."

By Amazon Customer on September 1, 2023.

★☆☆☆☆ "Sent me the wrong product twice now."

By Nathan on August 19, 2023.

★☆☆☆☆ "Was sent the wrong item twice."

By Madison kasmeier on July 17, 2023.

★☆☆☆☆ "There was only 1 shoe in the box"

By Amazon Customer on April 6, 2023.

120. These types of complaints about Defendants are typical of the complaints made about the products sold and the customer service provided by unauthorized sellers. ASICS allows its products to be sold only by Authorized Retailers, who are subject to and must follow the quality control and customer service requirements in the ASICS Terms, to prevent customers who purchase ASICS products from suffering experiences like those described in the above complaints about Defendants.

///

///

///

///

**COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF 15 U.S.C. § 1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS**

**Defendants Are Infringing the ASICS Trademarks by Selling Products Bearing the ASICS Trademarks that Do Not Come with the ASICS Warranty**

121.   As set forth above, genuine ASICS products purchased from ASICS or ASICS' Authorized Retailers who comply with ASICS' quality controls come with the ASICS Warranty.

122.   Because Defendants are not Authorized Retailers of ASICS products and do not comply with ASICS' quality controls, the products they sell bearing the ASICS Trademarks do not come with the ASICS Warranty.

123.   Because the products Defendants sell do not come with the ASICS Warranty, they are materially different from genuine ASICS products.  The ASICS Warranty is a material part of what consumers expect when they purchase ASICS products.

124.   Defendants' unauthorized sale of non-genuine products bearing the ASICS Trademarks is likely to, and does, create customer confusion because customers who purchase products from Defendants believe they are purchasing genuine ASICS products that come with the ASICS Warranty when, in fact, they are not.

**Defendants Are Tortiously Interfering with**
**ASICS' Agreements with Its Contractual Partners**

125.   Upon information and belief, Defendants have purchased ASICS products from ASICS contractual partners for purposes of unlawfully infringing upon and materially damaging the value of the ASICS Trademarks by reselling the products on the Internet outside of ASICS' quality controls.

126.   ASICS' agreements with its contractual partners prohibit them from selling ASICS products to third parties, like Defendants, engaged in unauthorized online sales of ASICS products.

127.   Defendants have known of this prohibition since, at the latest, approximately October 3, 2022.  On that date, ASICS mailed a cease-and-desist letter

1   to HAS BRANDS LLC and Halali, explaining that ASICS has agreements with its

2   contractual partners that prohibit them from selling ASICS products in such a

3   manner.

4       128.   ASICS' letter also informed Defendants that, by purchasing ASICS

5   products from its contractual partners for the purpose of reselling them, they were

6   causing a breach of the agreement between ASICS and its contractual partners and

7   were interfering with ASICS' agreements and business relationships.

8       129.   ASICS' October 3, 2022 letter also advised Defendants that if they

9   continued to acquire products from ASICS' contractual partners and then resold the

10   products, they would be liable for tortiously interfering with ASICS' contracts and

11   business relationships.

12       130.   Despite being provided this information, upon information and belief,

13   Defendants have continued to acquire ASICS products from ASICS' contractual

14   partners and then resold the products.

15       131.   Upon information and belief, Defendants do not disclose to the

16   contractual partners that they intend to resell the products they purchase in the

17   manner described herein.

18       132.   Upon information and belief, Defendants willfully and knowingly

19   induced, and are continuing to induce, unknown contractual partners to breach their

20   agreements with ASICS so that Defendants can acquire ASICS products and

21   unlawfully infringe upon the ASICS Trademarks by reselling the products.

22   **Infringing Products Bearing the ASICS Trademarks That Defendants Are Selling**

23   **Are Being Stored All Around the United States, Including in California**

24       133.   Individuals and entities who wish to sell products through storefronts on

25   Amazon must enter into a contract with Amazon.com Services LLC

26   ("Amazon.com").

27       134.   Once a seller has entered into a contract with Amazon.com, the seller

28   must choose whether it will: (i) itself store and ship products; or instead (ii) pay

ongoing fees to have Amazon.com store the seller's products at "fulfillment centers" (i.e., warehouses) operated by Amazon.com, and ship products to consumers once they have been purchased. Amazon.com offers the second method of storage and fulfillment through a service called "Fulfillment By Amazon."

135.   When a seller chooses to use the "Fulfillment By Amazon" service, it retains ownership of the products it stores at Amazon fulfillment centers and can have Amazon.com ship products back to the seller before they have been purchased by customers.

136.   However, sellers who use the "Fulfillment By Amazon" are not able to control where Amazon.com stores sellers' products. Sellers who use the "Fulfillment By Amazon" service must agree to "Fulfillment by Amazon Service Terms" set forth in their contract with Amazon.com.   These terms provide that Amazon.com can transfer sellers' products between fulfillment centers without notice or approval from sellers, although sellers are able to see—through their electronic Amazon accounts—where their products are currently being stored at any time.

137.   Amazon.com has more than 180 fulfillment centers spread around the United States, including at least one fulfillment center in almost every state. Amazon.com also promises to customers that all product orders it fulfills—including products that third-party sellers on Amazon sell to customers while using the "Fulfillment By Amazon" service—will be delivered within two days of purchase. To live up to this promise, Amazon.com carefully distributes all products it stores for third-party sellers between its fulfillment centers, all around the country, to ensure that products can be delivered within two days of purchase no matter where in the United States they are ordered from.

138.   As a result, sellers who use Amazon.com's "Fulfillment By Amazon" service have their products stored all around the country by Amazon.com.

///

///

**COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF 15 U.S.C. § 1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS**

1    139.   Defendants are using Amazon.com's "Fulfillment By Amazon" service

2    for many of the infringing products bearing the ASICS Trademarks they are selling

3    through their "HAS BRANDS" Amazon storefront, as shown below (highlighted):



15    140.   Defendants are intentionally using Amazon.com's vast, established

16    infrastructure to sell and ship infringing products bearing the ASICS Trademarks to

17    consumers nationwide, including customers located in California, and is paying

18    Amazon to do so through commissions and fees.   Defendants have not taken any

19    steps to prevent residents of California from purchasing products bearing the ASICS

20    Trademarks from Defendants' Amazon storefront.

21                    **The Individual Defendants Are Liable**

22    141.   ASICS asserts claims against Halali in both his individual capacity as

23    well as his capacity as a corporate officer of HAS BRANDS LLC.

24    142.   Upon information and belief, Halali directs, controls, ratifies,

25    participates in, or is the moving force behind the sales of infringing products bearing

26    the ASICS trademarks by HAS BRANDS LLC.   Accordingly, Halali is personally

27    liable for the infringing activities of HAS BRANDS LLC without regard to piercing

28    the corporate veil.

143.   Alternatively, upon information and belief, HAS BRANDS LLC follows so few corporate formalities and is so dominated by Halali that it is merely an alter ego of Halali.  HAS BRANDS LLC's status as an alter ego is supported, in part, by the fact that HAS BRANDS LLC's registered address is the same as Halali's residential home address and HAS BRANDS LLC appears to have no officers other than Halali.  Accordingly, ASICS is entitled to pierce the corporate veil and hold Halali personally liable for the infringing activities of HAS BRANDS LLC.

**ASICS Has Suffered Substantial Harm as a Result of Defendants' Conduct**

144.   As set forth above, the unauthorized sale of products bearing the ASICS Trademarks through unauthorized sellers such as Defendants has caused significant harm to the ASICS brand.

145.   When a consumer receives a non-genuine, damaged, or poor-quality product from an unauthorized seller, such as Defendants, the consumer associates that negative experience with ASICS.  As such, Defendants' ongoing sale of non-genuine products bearing the ASICS Trademarks harms the ASICS brand.

146.   ASICS has suffered, and will continue to suffer, significant monetary harm as a result of Defendants' actions including, but not limited to, loss of sales, damage to its intellectual property, and damage to its existing and potential business relations.

147.   ASICS has suffered, and will continue to suffer, irreparable harm as a result of Defendants' actions, including, but not limited to, irreparable harm to its reputation, goodwill, business and customer relationships, intellectual property rights, and brand integrity.

148.   ASICS is entitled to injunctive relief because, unless enjoined by this Court, Defendants will continue to unlawfully sell non-genuine products bearing the ASICS Trademarks, causing continued irreparable harm to ASICS' reputation, goodwill, relationships, intellectual property, and brand integrity.

///

1    149.   Furthermore, Defendants' conduct was and is knowing, reckless,

2 intentional, willful, malicious, wanton, and contrary to law.

3    150.   Defendants' disregard of communications from ASICS and continuation

4 of selling of non-genuine products despite being informed of their unlawful conduct

5 demonstrates that they are acting intentionally, willfully, and maliciously.

6    151.   Defendants' willful violations of the ASICS Trademarks and continued

7 pattern of misconduct demonstrate intent to harm ASICS.

8 

**FIRST CAUSE OF ACTION**

9 **Trademark Infringement**

10 **15 U.S.C. §§ 1114 and 1125(a)(1)(A)**

11 **(Against Defendants)**

12    152.   ASICS hereby incorporates the allegations contained in the foregoing

13 paragraphs as if fully set forth herein.

14    153.   ASICS is the owner or exclusive licensee of each of the ASICS

15 Trademarks.

16    154.   The ASICS Trademarks are registered with the United States Patent and

17 Trademark Office.

18    155.   The ASICS Trademarks are valid and subsisting trademarks in full force

19 and effect.

20    156.   Defendants willfully and knowingly used, and continue to use, the

21 ASICS Trademarks in interstate commerce for purposes of selling non-genuine

22 products bearing the ASICS Trademarks on the Internet without ASICS' consent.

23    157.   The products Defendants sell bearing the ASICS Trademarks are not

24 authorized for sale by ASICS.

25    158.   The products Defendants sell bearing the ASICS Trademarks are

26 materially different from genuine ASICS products because they are not subject to, do

27 not abide by, and interfere with the legitimate and substantial quality controls that

28 ASICS has established.

159.   The products Defendants sell bearing the ASICS Trademarks are also materially different from genuine ASICS products because they do not come with the ASICS Warranty, which accompanies genuine ASICS products.

160.   Defendants' unauthorized sale of materially different products bearing the ASICS Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer for sale are genuine ASICS products when they are not.

161.   Defendants' unauthorized sale of materially different products bearing the ASICS Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer for sale are sponsored, authorized, or otherwise connected with ASICS when, in fact, they are not.

162.   Defendants' unauthorized use of the ASICS Trademarks has infringed upon and materially damaged the value of the ASICS Trademarks and caused significant damage to ASICS' business relationships.

163.   As a proximate result of Defendants' actions, ASICS has suffered, and will continue to suffer immediate and irreparable harm.  ASICS has also suffered, and continues to suffer, damage to its business, goodwill, reputation, and profits in an amount to be proven at trial.

164.   ASICS is entitled to recover its damages caused by Defendants' infringement of the ASICS Trademarks and disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

165.   ASICS is entitled to injunctive relief under 15 U.S.C. § 1116 because it has no adequate remedy at law for Defendants' infringement and unless Defendants are permanently enjoined, ASICS will suffer irreparable harm.

166.   ASICS is entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendants willfully, intentionally, maliciously, and in bad faith infringed on the ASICS Trademarks.

**SECOND CAUSE OF ACTION**

**Unfair Competition**

**15 U.S.C. § 1125(a)**

**(Against Defendants)**

167.   ASICS hereby incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

168.   As set forth above, Defendants are selling non-genuine products bearing the ASICS Trademarks that are materially different from genuine ASICS products.

169.   Defendants' sale of non-genuine products bearing the ASICS Trademarks is likely to cause consumer confusion and lead consumers to believe that those products are affiliated with, connected with, associated with, sponsored by, or approved by ASICS when they are not.

170.   Defendants' conduct constitutes unfair competition under the Lanham Act, 15 U.S.C. § 1125(a).

171.   ASICS is entitled to injunctive relief under 15 U.S.C. § 1116 because it has no adequate remedy at law for Defendants' infringement and unless Defendants are permanently enjoined, ASICS will suffer irreparable harm.

172.   ASICS is entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendants willfully, intentionally, maliciously, and in bad faith infringed on the ASICS Trademarks.

**THIRD CAUSE OF ACTION**

**Unfair and Deceptive Business Practices**

**Cal. Bus. & Prof. Code §§ 17200, et seq.**

**(Against Defendants)**

173.   ASICS hereby incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

///

///

174. Defendants willfully and knowingly used, and continue to use, the ASICS Trademarks in interstate commerce for the purpose of advertising, marketing, and selling products bearing the ASICS Trademarks without the consent of ASICS.

175. The products Defendants sell are not genuine ASICS products because the products are not authorized for sale by ASICS, are not subject to ASICS' quality controls, and are materially different from genuine ASICS products.

176. Defendants' unauthorized sale of products bearing the ASICS Trademarks interferes with ASICS' ability to exercise quality control over products bearing the ASICS Trademarks because ASICS is unable to audit Defendants to confirm it is complying with ASICS' quality control requirements and/or close Defendants' accounts if they fail to comply with ASICS' quality control requirements.

177. The products Defendants sell are materially different from genuine ASICS products because they are not subject to, and interfere with, ASICS' quality controls.

178. The products Defendants sell are materially different from genuine ASICS products because they do not come with the ASICS Warranty or customer service benefits that accompany genuine ASICS products.

179. Defendants' use of the ASICS Trademarks in connection with the unauthorized advertising, promotion, and sale of products bearing the ASICS Trademarks misrepresents the nature, characteristics, qualities, and origin of Defendants' products because it suggests that the products are subject to ASICS quality control requirements when they are not.

180. Defendants' use of the ASICS Trademarks in connection with the unauthorized advertising, promotion, and sale of products bearing the ASICS Trademarks misrepresents the nature, characteristics, qualities, and origin of Defendants' products because it suggests that the products come with the ASICS

///

1  Warranty and customer service benefits that accompany genuine ASICS products
2  when they do not.

3       181.  Defendants' use of the ASICS Trademarks in connection with the
4  unauthorized advertising, promotion, and sale of products bearing the ASICS
5  Trademarks is likely to cause confusion, cause mistake, or deceive because it
6  suggests that the products Defendants offer for sale are genuine and authentic ASICS
7  products when they are not.

8       182.  Defendants' use of the ASICS Trademarks in connection with the
9  unauthorized advertising, promotion, and sale of products bearing the ASICS
10 Trademarks is likely to cause confusion, cause mistake, or deceive because it
11 suggests that the products Defendants offer for sale are sponsored, authorized, or
12 otherwise connected with ASICS when they are not.

13      183.  Defendants' unauthorized and deceptive use of the ASICS Trademarks is
14 material and likely to influence customers to purchase the products it sells, as
15 customers are likely to believe that the products Defendants advertise using the
16 ASICS Trademarks are genuine ASICS products that are subject to ASICS' quality
17 controls and come with the ASICS Warranty when they do not.

18      184.  Defendants' actions constitute unfair, deceptive, untrue, and/or
19 misleading advertising in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.*

20      185.  Defendants have also knowingly and willfully obtained ASICS products
21 through unlawful means and in violation of ASICS' agreements with its Authorized
22 Retailers.  Specifically, Defendants have continued to acquire ASICS products
23 through ASICS' Authorized Retailers for purposes of reselling those products on the
24 Internet despite knowing that ASICS' agreements with its Authorized Retailers
25 prohibit them from selling products to third parties for purposes of resale.

26      186.  Defendants' actions constitute unlawful, unfair, and/or fraudulent
27 business acts or practices in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.*
28 ///

**COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF 15 U.S.C. § 1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS**

187.   As a result of Defendants' unlawful actions, ASICS has suffered, and continues to suffer, irreparable harm.   ASICS has also suffered, and continues to suffer, damages, including, but not limited to, loss of business, goodwill, reputation, and profits in an amount to be proven at trial.

188.   ASICS is entitled to injunctive relief under Cal. Bus. & Prof. Code § 17203 because it has no adequate remedy at law for Defendants' infringement and, unless Defendants are permanently enjoined, ASICS will suffer irreparable harm.

**FOURTH CAUSE OF ACTION**

**Common Law Unfair Competition**

**(Against Defendants)**

189.   ASICS hereby incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

190.   Defendants' unauthorized advertisement and sale of non-genuine products bearing the ASICS Trademarks interferes with ASICS' quality controls and its ability to exercise quality control over products bearing the ASICS Trademarks.

191.   Defendants' unauthorized advertisement and sale of non-genuine products bearing the ASICS Trademarks is likely to cause confusion, cause mistake, or deceive consumers because Defendants' use of the ASICS Trademarks suggests that the products Defendants offer for sale are covered by the ASICS Warranty and are subject to, and abide by, ASICS' quality controls when, in fact, they do not.

192.   Defendants' unauthorized advertisement and sale of non-genuine products bearing the ASICS Trademarks is likely to cause confusion, cause mistake, or deceive consumers because Defendants' use of the ASICS Trademarks suggests that the products Defendants offer for sale are genuine ASICS products when, in fact, they are not.

193.   Defendants' unauthorized advertisement and sale of non-genuine products bearing the ASICS Trademarks is likely to cause confusion, cause mistake, or deceive consumers because Defendants' use of the ASICS Trademarks suggests

1  that the products Defendants offer for sale are sponsored by, authorized by, or

2  otherwise connected with ASICS when, in fact, they are not.

3      194.  Defendants' unlawful actions constitute active misrepresentation as to

4  the source of the products they sell.  These false representations tend to confuse

5  customers and induce them to believe that Defendants' products are genuine ASICS

6  products when, in fact, they are not.

7      195.  Defendants' unauthorized sale of products bearing the ASICS

8  Trademarks and unauthorized use of the ASICS Trademarks in advertising infringes

9  the ASICS Trademarks and constitutes unfair competition at common law.

10      196.  Defendants' unauthorized use of the ASICS Trademarks has materially

11  damaged the value of the ASICS Trademarks, caused significant damage to ASICS'

12  business relations, and infringed the ASICS Trademarks.

13      197.  As a result, ASICS has suffered, and continues to suffer, immediate and

14  irreparable harm.  ASICS has also suffered, and continues to suffer, damages,

15  including, but not limited to, loss of business, goodwill, reputation, and profits in an

16  amount to be proven at trial.

17      198.  ASICS is also entitled to punitive damages because Defendants acted

18  with actual malice accompanied by a wanton and willful disregard of persons who

19  foreseeably might be harmed by their acts and omissions.

20                   **FIFTH CAUSE OF ACTION**

21          **Intentional Interference with Contractual Relations**

22                      **(Against Defendants)**

23      199.  ASICS hereby incorporates the allegations contained in the foregoing

24  paragraphs as if fully set forth herein.

25      200.  ASICS has contracts with its Authorized Retailers who sell ASICS's

26  products (the "Contracts").  The Contracts prohibit Authorized Retailers from selling

27  ASICS's products to third parties, such as Defendants, who are not Authorized

28  Retailers and who intend to resell the products.

201.  Defendants know and, at all relevant times described herein, knew of ASICS' Contracts with its Authorized Retailers who sell ASICS' products.

202.  Defendants are not Authorized Retailers of ASICS' products.

203.  Defendants have sold—and continue to sell—products bearing the Trademarks through their Amazon and eBay storefronts.

204.  Based on these facts, it is plausible and a reasonable inference that Defendants acquired the products they are reselling from one or more of ASICS' Authorized Retailers.

205.  Defendants purchased products from Authorized Retailers for the purpose of reselling them on the Internet, which prevented performance of at least one or more of the Contracts and/or made performance of the Contracts for ASICS more expensive or difficult.

206.  Defendants, without legal right, privilege, or justification, intended to disrupt the performance of one or more of the Contracts, or knew that disruption of one or more of the Contracts was certain or substantially certain to occur as a result of their conduct.

207.  Defendants' actions have caused or were a substantial factor in causing ASICS to suffer, and continue to suffer, substantial harm, including loss of sales and damage to ASICS' existing and potential business relations with one or more of ASICS' Authorized Retailers, in an amount to be proven at trial, and Defendants' actions were a substantial factor in causing ASICS's harm.

## **PRAYER FOR RELIEF**

WHEREFORE, ASICS prays for relief and judgment as follows:

A.  Judgment in favor of ASICS and against Defendants in an amount to be determined at trial including, but not limited to, compensatory damages, lost profits, damage to ASICS' reputation and loss of goodwill, statutory damages, treble damages, consequential damages, restitution, including disgorgement of Defendants' profits, and pre-judgment and post-judgment interest, as permitted by law;

B.      Preliminary and permanent injunctions enjoining Defendants and any employees, agents, servants, officers, attorneys, any and all other entities owned or controlled by Defendants, and all of those in active concert and participation with Defendants (the "Enjoined Parties") as follows:

i)      Prohibiting the Enjoined Parties from advertising or selling, via the Internet or otherwise, all products bearing the ASICS Trademarks;

ii)     Prohibiting the Enjoined Parties from using any of the ASICS Trademarks in any manner, including advertising on the Internet;

iii)    Prohibiting the Enjoined Parties from importing, exporting, manufacturing, producing, distributing, circulating, selling, offering to sell, advertising, promoting, or displaying any and all products bearing any of the ASICS Trademarks;

iv)     Prohibiting the Enjoined Parties from disposing of, destroying, altering, moving, removing, concealing, or tampering with any records related to any products sold by them which contain the ASICS Trademarks including invoices, correspondence with vendors and distributors, bank records, account books, financial statements, purchase contracts, sales receipts, and any other records that would reflect the source of the products that Defendants have sold bearing these trademarks;

v)      Requiring the Enjoined Parties to take all action to remove from the Enjoined Parties' websites any reference to any of ASICS' products, or any of the ASICS Trademarks;

vi)     Requiring the Enjoined Parties to take all action, including but not limited to, requesting removal from the Internet search engines (such as Google, Yahoo, and Bing), to remove from the Internet any of the ASICS Trademarks which associate ASICS' products

**COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF 15 U.S.C. § 1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS**

1      or the ASICS Trademarks with the Enjoined Parties or the

2      Enjoined Parties' websites;

3      vii)   Requiring the Enjoined Parties to take all action to remove the

4            ASICS Trademarks from the Internet, including, but not limited

5            to, third-party marketplace websites such as www.amazon.com,

6            www.walmart.com, www.ebay.com, and www.target.com; and

7      viii)  Requiring the Enjoined Parties to take all action to remove, or

8            cause to be removed, any customer reviews of products bearing

9            ASICS' trademarks that were sold by Defendants on third-party

10           marketplace     websites     including,     but     not     limited     to,

11           www.amazon.com and www.ebay.com.

12     C.     An award of attorneys' fees, costs, and expenses.

13     D.     Such other and further relief as the Court deems just, equitable, and

14 proper.

15                              **<u>JURY DEMAND</u>**

16     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, ASICS demands a

17 trial by jury on all issues so triable.

18

19 Dated:  November 30, 2023          Respectfully submitted,

20

21                                   */s/ Shane T. Micheil*
                                     Shane T. Micheil, Esq.
22                                   VORYS, SATER, SEYMOUR
                                     AND PEASE LLP
23                                   ***Attorneys for Plaintiff***
24                                   ***ASICS AMERICA CORPORATION***

25

26

27

28

- 43 -

**COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF 15 U.S.C. §
1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS**